UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

LISA APTAKER MD (DAUGHTER OF JULIA),

                   *Petitioner,*

     – against –

JUDAH SAMET, *Court Appointed Guardian*, JUDAH SAMET, *Chief Executive Officer, Allied Community Support Services*, SARAH SAMET, *Director, Allied Community Support Services*, FRANCISCO NUNEZ, *Case Manager, Allied Community Support Services*, ALLIED COMMUNITY SUPPORT SERVICES, STEVEN WIEDER, *Administrator*, BEZALEL REHABILITATION & NURSING HOME, NAT GORDON, *Chief Operating Officer, Bezalel Rehabilitation & Nursing Home,*

                   *Respondents.*

**MEMORANDUM & ORDER**
26-cv-01708 (NCM)

---

**NATASHA C. MERLE**, United States District Judge:

On March 12, 2026, pro se petitioner Lisa Aptaker filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 on behalf of her 90-year-old mother, Julia Lamburt, who petitioner asserts is being held against her will in a nursing home by Lamburt's court-appointed legal guardian. *See* Emergency Pet. for Writ of Habeas Corpus ("Pet."), ECF No. 1. Petitioner also filed a motion for a preliminary injunction and/or temporary restraining order and an application for the Court to request a *pro bono* attorney to represent petitioner. *See* Decl. in Supp. of Mot. to Hear Case on Emergency Basis and for Prelim. Inj. & TRO ("PI Mot."), ECF No. 6; Appl. for the Court to Request Pro Bono Counsel ("Pro Bono Appl."), ECF No. 8. On March 31, 2026, petitioner filed a motion to disqualify

1

attorney Jessica Moore (referred to by petitioner as "Jennifer Moore"), who has appeared in this action on behalf of respondent Allied Community Support Services ("ACSS"). *See* Ltr. Mot. to Disqualify Counsel ("Mot. to Disqualify"), ECF No. 21. For the following reasons, the petition and each of petitioner's requests is DENIED.

## BACKGROUND

In October 2023, non-party Dr. Fritz Francois, MD, the Chief of Hospital Operations at NYU Langone Hospitals, filed a verified petition in the Supreme Court of the State of New York, New York County under Article 81 of the New York Mental Hygiene Law, alleging that Lamburt was incapacitated and seeking the appointment of a guardian to manage her personal needs and affairs. *See* Verified Pet. ("Art. 81 Pet."), ECF No. 18-2. Dr. Francois stated that he had "significant concerns related to [Lamburt's] health, welfare, and personal well-being," particularly that, without the appointment of a guardian and placement in a skilled nursing facility, Lamburt could end up outside with no place to go and no funds, and may suffer mistreatment by Aptaker given "a history of abuse/neglect of [Lamburt] by her daughter." Art. 81 Pet. ¶¶ 3, 5, 13–14.

Following Dr. Francois's submission of the Article 81 Petition, "[a] hearing pursuant to Mental Hygiene Law § 81.11 was held over the course of four days" before the Hon. Lisa A. Sokoloff of the Supreme Court of the State of New York, New York County. *See* Decision and Order ("Guardianship Order") at 3, ECF No. 18-3.[1] Lamburt "was present for the hearing and participated." Guardianship Order 3. She was represented by court-appointed counsel. Guardianship Order 3. Furthermore, an independent attorney served as Court Evaluator, "a neutral party who is intended to be the 'eyes and ears' of the court,

---

[1]    Throughout this Order, page numbers for docket filings refer to the page numbers assigned in ECF filing headers.

and who is tasked with conducting a thorough investigation of the claims made in the application" to obtain information helpful to the court in reaching its determination. *Banks v. Richard A.*, 100 N.Y.S.3d 818, 823 (Sup. Ct. 2019); *see also In re N.Y. Presbyterian Hosp.*, 693 N.Y.S.2d 405, 409 (Sup. Ct. 1999).[2] In addition, "Ms. Lamburt's daughter, Lisa Aptaker, was present except for the February 1, 2024 portion of the hearing, having refused the Court's offer to transport her free of charge via Uber." Guardianship Order 3.

At the hearing, testimony was provided by two different social workers for NYU Langone Hospital with 21 years of experience between them. Guardianship Order 3. One of the social workers testified that Lamburt "did not have access to her own finances and that there was a history of alleged abuse by the daughter, Lisa Aptaker, that included allegations that the daughter took [Lamburt]'s apartment keys from her, locked [Lamburt] in her room with a porta-potty instead of letting her use the bathroom, and misappropriated funds belonging to [Lamburt]." Guardianship Order 3–4.

On March 13, 2024, the Court found Lamburt "in need of assistance" and that the lack of such assistance would "place [Lamburt] at risk of harm." Guardianship Order 4. The Court found that the Article 81 petition had met its burden by clear and convincing evidence, "deem[ed] [Lamburt] an Incapacitated Person," and "establishe[d] a guardianship of her person and property." Guardianship Order 4. The Court appointed attorney Joseph Ruotolo, Esq. to serve as guardian on an indefinite basis. Guardianship Order 4. Subsequently, on July 31, 2024, the Court relieved Ruotolo of his duties (for reasons unrelated to his performance) and appointed ACSS in his place. Omnibus Order

---

[2]    Throughout this Order, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

3

Including Recusal ("Omnibus Order") at 2, ECF No. 18-4. On October 17, 2024, the Court issued an Amended Order and Judgment confirming that Lamburt is incapacitated and maintaining ACSS's appointment as guardian. *See* Am. Order and J. Appointing Successor Guardian for the Personal Needs and Property Management with Short Form Commission ("Am. Guardianship Order"), ECF No. 18-5.

Aptaker appealed the Amended Guardianship Order to the Appellate Division of the Supreme Court in the First Judicial Department. On January 13, 2026, the Appellate Division affirmed the Amended Guardianship Order. *See* Decision and Order, ECF No. 18-6. On March 17, 2026, Aptaker appealed the Appellate Division's ruling to the New York Court of Appeals. *See* Notice of Appeal, ECF No. 18-12. As of April 8, 2026, the appeal remains pending before the Court of Appeals. *See* Ltr. Regarding Status of New York Court of Appeals ("Pet's Ltr."), ECF No. 27. The Court of Appeals is the highest court for the State of New York. *See Van Buskirk v. The N.Y. Times Co.*, 325 F.3d 87, 89 (2d Cir. 2003).

On March 12, 2026, petitioner filed the instant petition for a writ of habeas corpus, asserting next-friend standing on behalf of Lamburt. *See* Pet. On March 24, 2026, the Court ordered respondents to show cause in writing why the petition should not be granted. Docket Entry dated Mar. 24, 2026. Respondents ACSS and Bezalel Rehabilitation & Nursing Home ("Bezalel") each filed responses. *See* Mem. in Opp'n ("ACSS Opp'n"), ECF No. 18; Aff. in Opp'n, ("Bezalel Opp'n"), ECF No. 20. Before the Court is the petition, as well as petitioner's motion for a preliminary injunction and/or temporary restraining order, *see* PI Mot., petitioner's application for a *pro bono* attorney, *see* Pro Bono Application, and petitioner's motion to disqualify ACSS's attorney Jennifer Moore, *see* Mot. to Disqualify.

4

## DISCUSSION

Section 2241 authorizes federal district courts "to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). Before a federal court may review a petition for writ of habeas corpus brought under Section 2241, the petitioner must "exhaust available state court remedies." *Anderson v. Terrell*, No. 11-cv-04538, 2015 WL 4561821, at *3 (E.D.N.Y. July 28, 2015). Section 2241 does not include a statutory exhaustion requirement the way that Section 2254 does. *See* 28 U.S.C § 2254(b). However, courts apply a similar judicially-crafted exhaustion requirement to petitions brought under Section 2241. *See United States ex rel. Scranton v. New York*, 532 F.2d 292, 294 (2d Cir. 1976) ("While . . . Section 2241 does not by its own terms require the exhaustion of state remedies as a prerequisite to the grant of federal habeas relief, decisional law has superimposed such a requirement in order to accommodate principles of federalism."); *White v. Guadarama*, No. 24-cv-00205, 2024 WL 3638261, at *4 (D. Conn. Aug. 2, 2024) ("[F]ederal courts apply the same exhaustion requirements to [S]ection 2241 petitions as they do to [S]ection 2254 petitions.").

In order "[t]o meet the exhaustion requirement, a petitioner must present the essential factual and legal bases of his federal claim to each appropriate state court, including the highest state court capable of reviewing it, in order to give state courts a full and fair 'opportunity to pass upon and correct alleged violations of . . . federal rights.'" *Rivera v. Connecticut*, No. 20-cv-00860, 2022 WL 124248, at *2 (D. Conn. Jan. 13, 2022) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam)). Until the state appellate process has fully run its course, petitioner will not yet have exhausted. *See, e.g., Johnson v. Samuelson*, No. 24-cv-00126, 2024 WL 1076896, at *2 (S.D.N.Y. Feb. 8, 2024)

("Because [p]etitioner's direct appeal is pending, and she has not fully exhausted her state court remedies by raising her grounds for relief through one complete round of the State's established review process, the Court denies the petition without prejudice . . . ."). A petitioner's "federal habeas petition must be dismissed if the [petitioner] has not exhausted available state remedies as to any of [their] federal claims." *Weeks v. Senkowski*, 275 F. Supp. 2d 331, 336 (E.D.N.Y. 2003) (citing *Rose v. Lundy*, 455 U.S. 509, 522 (1982)).

In the instant case, petitioner concedes that an appeal of the Amended Guardianship Order is currently pending before the New York Court of Appeals. *See* Pet's Ltr. 1. Accordingly, the Court finds that the instant petition must be dismissed for failure to exhaust state remedies.

Petitioner's principal argument to get around the exhaustion requirement is that the pending state court appeal addresses a distinct issue from the issues raised in the instant petition. *See* Pet's Ltr. 1. Specifically, petitioner argues that the direct appeal concerns the guardianship, while the instant petition concerns Lamburt's involuntary placement in a skilled nursing facility. *See* Pet's Ltr. 1. ("[A]n appeal of right through the Court of Appeals would be a lengthy process addressing the guardianship, NOT the urgent issues at hand which are . . . the involuntary confinement of a 90 year old woman.").

The Court need not decide whether there is a material distinction between petitioner's direct appeal in state court and federal petition because, either way, petitioner has still failed to exhaust state remedies. Federal habeas review is not a vehicle to fully re-litigate a state court judgment, but rather is exclusively a vehicle to raise issues of federal law. Accordingly, in order to exhaust, a petitioner must present the "essential factual and legal premises" of their federal law claim "to the highest state court capable of reviewing it." *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005). In the instant case, in order for

petitioner to have met the exhaustion requirement, the New York Court of Appeals must have at some point ruled or declined to rule on petitioner's federal law claims. Aside from the direct appeal currently pending before the Court of Appeals, petitioner has not identified any other proceeding or occasion where the Court of Appeals considered or had opportunity to consider these claims. Accordingly, if petitioner's federal law claims are at issue in the pending direct appeal, then petitioner has not exhausted; but similarly, if petitioner's federal law claims are *not* at issue in the pending direct appeal, then petitioner has likewise not yet exhausted. Either way, at this juncture, petitioner has not met the exhaustion requirement that is a prerequisite for federal habeas review.

Petitioner also argues that, even if she has not exhausted state remedies, the Court should excuse her failure to exhaust. *See* Pet's Ltr. 1. Specifically, petitioner argues that an appeal to the Court of Appeals would, at best, "be a lengthy process" and thus is "not practical when addressing an emergency such as involuntary confinement." Pet's Ltr. 1. Petitioner suggests that, consequently, there is functionally "no relief available through the Court of Appeals." Pet's Ltr. 1.

Liberally construed, petitioner's filings could be read to raise three distinct arguments for excusing the exhaustion requirement. First, petitioner could be understood to be raising an argument that exhaustion should be waived because the state court process is, or will be, unreasonably slow. It is true that federal courts may waive exhaustion based on a state court's substantial delay. *See Roberites v. Colly*, 546 F. App'x 17, 19 (2d Cir. 2013) (summary order) ("We have recognized that a failure to exhaust may be excused . . . where there has been substantial delay in the state . . . appeal process."). However, the typical case excusing exhaustion on this basis involves a delay of multiple years, not weeks. *See, e.g., Cody v. Henderson*, 936 F.2d 715, 718 (2d Cir. 1991) (excusing failure to exhaust

7

after nine-year delay); *see also Simmons v. Reynolds*, 898 F.2d 865, 870 (2d Cir. 1990) (explaining that delay of three years would likely excuse compliance with the exhaustion requirement). Given that petitioner filed her latest state appeal about one month ago, petitioner cannot credibly argue that exhaustion should be excused on the basis of substantial delay.

Second, petitioner could be understood to be raising an argument based on futility. It is correct that exhaustion may be excused "if there is no opportunity to obtain redress in state court or if the corrective process is so clearly deficient as to render futile any effort to obtain relief." *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981). However, petitioner has provided no argument that the Court of Appeals is incapable of giving fair consideration to petitioner's federal constitutional claims. Accordingly, petitioner has not established that her state court remedies are futile.

Third, petitioner may be raising an argument based on the alleged emergency nature of the risks of harm to Lamburt. In other words, petitioner could be understood to be arguing that, even if the New York Court of Appeals will dispose of the appeal in a reasonable timeframe for a typical civil case, the injuries stemming from the purported violations of federal law are so immediately urgent as to render the state court's normal pace too slow under the circumstances. Courts have waived the exhaustion requirement in extraordinarily urgent situations. *Lagan v. Edge*, No. 20-cv-02221, 2020 WL 3403109, at *4 (E.D.N.Y. June 19, 2020) ("Some courts have waived exhaustion where any delay poses a serious threat to the [petitioner]'s health and safety."); *see, e.g., Martinez-Brooks v. Easter*, 459 F. Supp. 3d 411, 436–38 (D. Conn. 2020) (waiving exhaustion requirement for medically vulnerable prisoners at prison experiencing severe COVID-19 outbreak).

Here, the Court finds that petitioner has not established that Lamburt's health and safety are jeopardized by any delay. The ongoing and potential harms alleged by petitioner fall into two broad categories. First, petitioner discusses harms to Lamburt's rights and welfare stemming from the fact of her confinement: that Lamburt is being harmed because she is being deprived of her fundamental constitutional right to liberty and is suffering from the attendant consequences, such as isolation from her family and friends. *See generally* Pet. Second, petitioner makes repeated reference to unclear, nonspecific risks to Lamburt's health and safety, along with conclusory assertions that Lamburt has been subject to "abuse," "exploitation," and other undefined mistreatment at the nursing home where she is confined. *See generally* Pet.; Pet's Ltr.

As to the first category of alleged harm, the Court finds that the harm of being deprived of liberty alone, although serious, is not a sufficient basis to excuse of the exhaustion requirement in this case. If courts were to treat deprivation of liberty as an exceptional emergency, then virtually all habeas petitions alleging that the petitioner is being confined on a legally deficient basis would arguably be exempt from the exhaustion requirement.

As to the second category, the Court finds that petitioner's allegations of health and safety risks lack the factual support necessary to persuade the Court that Lamburt is at an urgent risk of harm. Petitioner alleges that: (1) Lamburt "reports that she has been subjected to abuse, exploitation, and deliberate isolation," Pet. 9; *see also* Pet. 2; (2) Lamburt has "reported instances of physical abuse and mistreatment by nursing staff" as well as "verbal abuse," Pet. 2, 6, 9; (3) Lamburt "is undergoing medical neglect," Pet's Ltr. 1; (4) Lamburt's "involuntary confinement . . . poses very serious health and safety issues including possible death," Pet's Ltr. 1; and (5) Lamburt has been subject to

9

"substantial emotional and psychological harm" stemming from her isolation and that "[a]s an elderly and medically vulnerable individual, [Lamburt] faces a heightened risk of severe physical and psychological harm as a result of her continued involuntary confinement," Pet. 2, 9. Although troubling, these assertions are each of a conclusory nature. At no point does petitioner articulate a specific act of physical abuse perpetrated on Lamburt or a specific medical need of Lamburt's that has been neglected. These allegations fall well short of the concrete, detailed descriptions of extraordinary circumstances necessitating waiver of the exhaustion requirement. *See, e.g.*, *Martinez-Brooks*, 459 F. Supp. at 416–18 (discussing petitioners who suffer from "hypertension" and other "medical conditions that place them at higher risk for serious illness or death from [COVID-19]," the fact that "the mortality rate from COVID-19 is 8.4% for individuals with hypertension," and the fact that petitioners were being held at a prison "contending with [a] significant COVID-19 outbreak[]" where "sixty-nine inmates at [the prison] ha[d] tested positive, out of an inmate population of approximately 1,000").

Petitioner has submitted a letter purportedly authored by Lamburt discussing her circumstances, but the letter does not substantiate petitioner's allegations of health and safety risks. *See* Pet. 27–29. For one, the letter makes no mention of any instance of physical abuse or medical neglect. *See* Pet. 27–29. Moreover, while the letter does assert that Judah Samet, the Chief Executive Officer of ACSS, "is abusing me," the letter alleges that he is doing so by "taking all of my retirement money every month" and "planning [to] surrender[] my and my daughter's apartment to the landlord." Pet. 28. Even assuming that these allegations are true and constitute financial abuse, petitioner has not connected these actions to an urgent risk of harm to Lamburt's health and safety.

10

Furthermore, petitioner has submitted social media posts and a news article purportedly showing misconduct by Samet with respect to individuals other than Lamburt. *See* Pet. 10, 44–60. Even assuming that these allegations are true, they are not sufficient to show that there is an urgent risk of harm to Lamburt specifically.

Accordingly, petitioner has not established that Lamburt's health and safety will be jeopardized by permitting the state court appellate process to proceed. Petitioner thus has not established the necessity of waiving the requirement of state exhaustion before pursuing federal habeas relief.

## CONCLUSION

For the foregoing reasons, the petition is DISMISSED for failure to exhaust state remedies. Because the instant petition is dismissed, petitioner's motion for a preliminary injunction and/or temporary restraining order, application for pro bono counsel, and motion to disqualify ACSS's attorney are DENIED as moot.

The Clerk of Court is respectfully directed to enter judgment consistent with the Order and close the case.

**SO ORDERED.**

/s/ Natasha C. Merle
NATASHA C. MERLE
United States District Judge

Dated:        April 20, 2026
              Brooklyn, New York

11